UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
— — — — — — — — — — — — — — — — — — — — — — — — — — x
MICHAEL KING,

                      Plaintiff,

     -against-

THE CITY OF NEW YORK, WILLIAM EISNER,
CRAIG KEARNEY, MICHAEL CENTRONE,
DWAYNE FRANCIS, DION EDWARDS, ROBERT
MALONEY, BRIAN CORRELL, LUIS DEMARCO,
U/C #C0097, U/C #C0021, and JOHN DOES 1-10
Consisting of Individuals To Be Determined,

                      Defendants.
— — — — — — — — — — — — — — — — — — — — — — — — — — X

**AMENDED COMPLAINT**

09-CV-3179 (RRM)(JO)

**JURY TRIAL DEMANDED**

    Plaintiff Michael King, by his attorney, Ruskin Moscou Faltischek, P.C., as and for an amended complaint herein alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff Michael King ("Plaintiff"), brings this action against defendants the City of New York (the "City"), William Eisner, Craig Kearney, Michael Centrone, Dwayne Francis, Dion Edwards, Robert Maloney, Brian Correll, Luis Demarco, U/C #C0097, U/C #C0021, and John Does 1-10 (collectively, "Defendants"), for damages arising out of an assault by members of the New York Police Department and the subsequent abuse by the Department of Correction, which included violations of Plaintiff's constitutional rights to freedom from unreasonable searches and seizures, freedom from compelled self-incrimination, and right to equal protection of the law under State and Federal constitutions, assault, battery, intentional infliction of emotional distress, conspiracy,

gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and harassment.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action to redress the deprivation of rights secured him by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1983 & 1985(3), Article 1, §§11 & 12 of the New York State Constitution, and State common law.

3.     As Plaintiff contends that Defendants, *inter alia*, violated his Federal constitutional rights, this court has jurisdiction pursuant to 28 U.S.C. §§1331 & 1343, and 42 U.S.C. §§1983 & 1985(3).

4.     As Plaintiff's State claims arise from the same common nucleus of operative facts as the Federal claims, this court has supplemental jurisdiction over the State claims pursuant to 28 U.S.C. §1367.  A notice of claim was duly filed on defendant City within 90 days of the incidents at issue, more than 30 days have elapsed since such filing, and the City has failed to settle Plaintiff's claims.  Moreover, this action was filed within one year and 90 days of the incidents that are the basis of this case.

5.     Venue properly lies with this court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this claim occurred in the Eastern District of New York.

## PARTIES

6.     Plaintiff is a 49 year old resident of the State of New York, Queens County.  At the time of the incidents in question, he resided at 163-25 145th Road, Jamaica, New York.

7.     Upon information and belief, defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated Plaintiff's rights as described herein.  Defendant City operates and governs the New York City Police Department and the New York City Department of Correction.

8.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant William Eisner, Shield No. 10007, was a sergeant with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1206, New York, New York 10038.

9.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Craig Kearney, Shield No. 03326, was a sergeant with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

10.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Michael Centrone, Shield No. 04471, was a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

11.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Dwayne Francis, Shield No. 01851, was

a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

12.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Dion Edwards, Shield No. 04568, was a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

13.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Robert Maloney, Shield No. 04443, was a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

14.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Brian Correll, Shield No. 03995, was a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

15.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant Luis DeMarco, Shield No. 01911, was a detective with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

16.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant U/C #C0097 (formerly U/C #6998), was an under cover officer with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

17.     Upon information and belief, during the relevant times mentioned herein and when the incidents complained of occurred, defendant U/C #C0021 (formerly U/C #879), was an under cover officer with the New York City Police Department and is currently employed in that capacity at 1 Police Plaza, Room #1100, New York, New York 10038.

18.     John Does 1-10 consist of individuals currently or formerly employed by the New York City Department of Correction, each of whom is believed to have violated Plaintiff's rights; and to have aided, abetted and conspired to violate Plaintiff's rights; the identities of which will be determined through discovery in this matter.

19.     At the time of the incident and at all times pertinent hereto, defendant City and its agents acted under color of law, statute, ordinance, regulation, custom, or usage.

## STATEMENT OF FACTS

20.     The following is a summary set forth for the purpose of demonstrating, averring, and providing notice of Plaintiff's claims against the Defendants.

21.     Beginning on or about March 4, 2008, officers of the New York Police Department, including the individually named officers above, violated Plaintiffs' rights which violations were compounded by further abuse by the Department of Correction, as described herein.

22.     On March 4, 2008, Plaintiff was returning home from an appointment with his Probation Officer.[1]  While Plaintiff waited at the bus stop at the corner of 89th Street and Parsons Avenue, he noticed a man next to him make a cell phone call, and moments later,

---

[1] Plaintiff's appointment included a drug-screen in connection with a counseling and rehabilitation program in which he was participating; his test results were negative.

an unmarked police car drove up onto the sidewalk near where he was standing. A plainclothes officer jumped out of the vehicle and pointed his gun at Plaintiff. Without exchanging any words with Plaintiff, the plainclothes officer picked him up and threw him forcefully to the ground, striking and severely injuring the right side of Plaintiff's body.

23.     The officer then placed his body on top of Plaintiff's and started screaming, "Where's the drugs?" repeatedly. Plaintiff told the officer he had no drugs in his possession and without any provocation or justification whatsoever, the officer proceeded to punch Plaintiff in his right eye three times, resulting in severe and permanent injury to Plaintiff's eye.

24.     Only after this savage attack occurred did another officer exit one of the police vehicles that had pulled up to the bus stop and yell to the plainclothes officer, "John, that's the wrong guy." Both officers then ran to intercept a suspect crossing the street.

25.     When the plainclothes officer returned to where he had left Plaintiff bloodied and incapacitated, the officer roughly picked him up by his shirt-front and dragged him to the police van. He then opened the back doors and flung Plaintiff inside, striking Plaintiff's right side, the same body part injured when the officer body-slammed Plaintiff on the ground. This new blow to Plaintiff's right side caused excruciating pain, leaving Plaintiff certain that he had been severely injured.

26.     At no time during the entire ordeal did Plaintiff in any way attempt to resist the officers or raise his hand against them. Nevertheless, multiple officers continued to assault and traumatize Plaintiff, who was unarmed and posed no threat to them; indeed,

the assault continued even after Plaintiff was handcuffed. The injuries the police officers inflicted on Plaintiff during this savage beating are permanent and disabling and will continue to afflict him physically, emotionally and psychologically for the rest of his life.

27.     Shortly after arresting Plaintiff, the police officers who beat him handed him over to the officers operating a police van full of arrested suspects. While in the van, the police officers refused Plaintiff's request for medical attention.

28.     Plaintiff was taken to the 103rd Precinct. The officers at the 103rd Precinct realized that the injuries inflicted upon Plaintiff were serious and that he would need medical attention. The officers called an ambulance, which took Plaintiff to Queens Hospital Emergency Room. At Queens Hospital, the officers accompanying Plaintiff refused to allow Plaintiff to remain at the hospital for observation, as suggested by hospital staff.

29.     Plaintiff was eventually brought to Central Booking, charged with criminal sale of a controlled substance in the 3rd degree, criminal possession of a controlled substance in the 7th degree, and criminal facilitation in the 4th degree.

30.     Plaintiff was arraigned March 6, 2008 and remanded to Riker's Island Correctional Facility ("Riker's Island") when he was unable to pay his $50,000 bail. Upon arrival at Riker's Island, the correction officers were immediately made aware of Plaintiff's severe health condition, but Plaintiff was denied treatment for approximately one month.

31.     While awaiting his court appearance in prison, Plaintiff's physical health continually deteriorated due to the injuries inflicted by the arresting officers. Upon multiple occasions Plaintiff coughed up blood. He complained of dizziness, blurred

7

vision, and significant pain in ribs and chest on the right side of his body to employees at the prison hospital.

32.     On April 29, 2008, Department of Correction employees took Plaintiff from Riker's Island to appear in court in Queens County, but, due to the injuries inflicted by NYPD officers at the time of his arrest, including the individually named officers above, and the refusal of Department of Correction employees to provide him with the necessary medical care, he passed out in the cell waiting for his case to be called.

33.     The correction officers took him to Jacobi Medical Center ("Jacobi Medical"). The doctor who examined Plaintiff on April 29, 2008, at Jacobi Medical concluded that Plaintiff's injuries from the police beating on March 4, 2008, had not been properly treated subsequent to his arrest. As a result of this failure to properly treat Plaintiff's injuries, the doctor at Jacobi Medical also concluded that Plaintiff would need surgery to repair the injury to his ribs.

34.     When Plaintiff returned to Riker's Island, Department of Correction employees continued to deny him the treatment that he so desperately needed. As a result of the continued refusal to provide Plaintiff with the necessary treatment, his symptoms of dizziness, blurred vision, and coughing up blood persisted.

35.     On June 21, 2008, Plaintiff fell in the shower and further injured himself. His fall was caused by his continued dizziness resulting from lack of treatment by employees of the New York City Department of Correction, for injuries inflicted by New York City Police officers. Despite the additional injuries from the fall in the shower, Department of Correction employees still refused to provide Plaintiff with the proper medical treatment,

most significantly the surgery that a doctor at Jacobi Medical concluded that he needed months earlier.

36.   Plaintiff did not engage in suspicious, unlawful or criminal activity prior to or during the above stated incidents.

37.   Neither the police officers nor the correction officers observed Plaintiff engaged in suspicious, unlawful, or criminal conduct at any time prior to or during the above stated incidents.

38.   At no time prior to or during the above stated incidents were either the police officers or correction officers provided with information or in receipt of a credible or an objectively reasonable complaint from a third person that Plaintiff had engaged in suspicious, unlawful or criminal conduct.

39.   Upon information and belief, defendant City was aware prior to the incidents that both the police and correction officers involved lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers.  Despite such notice, defendant City has retained these officers, and failed to adequately train and supervise them.

40.   As a result of Defendants' actions, Plaintiff experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

## CAUSES OF ACTION

## First Cause of Action: Deprivation of Constitutional Rights

41.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

42.    The conduct of defendant City, through its agents, including, but not limited to, the individually named officers above, and as described herein, amounted to excessive use of force, unlawful search and seizure, assault, battery, intentional and negligent infliction of emotional distress, conspiracy, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and harassment.

43.    The conduct of defendant City, through its agents, including, but not limited to, the individually named officers above, and as described herein, violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, §§11 & 12 of the New York State Constitution, including the freedom from unreasonable searches and seizures, freedom from compelled self-incrimination, and right to equal protection of the law and is actionable under 42 U.S.C. §1983.

44.    Defendant City's agents, including, but not limited to, the individually named officers above, acted under pretense and color of state law in their individual and official capacities and within the scope of their employment.  These acts by defendant City's agents were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said agents of defendant City acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his rights secured by the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution, and Article 1, §§11 & 12 of the New York State Constitution.

45.    As a direct and proximate result of the misconduct and abuse detailed above, Plaintiff experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

46.    Under State law, defendant City is responsible for its employees' actions under the doctrine of *respondeat superior.*

47.    The intentional acts, abuse, and omissions committed by the defendant City's agents were done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff as a civilians and citizens of the State of New York.  Furthermore, the officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred as a result of defendant City's negligent hiring and retention of the involved officers.  Plaintiff also did not provoke defendant City's agents in any way.  As a result, Plaintiff is entitled to exemplary damages.

## Second Cause of Action: Conspiracy

48.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

49.    Defendant City's agents, including, but not limited to, the individually named officers above, conspired to violate Plaintiff's constitutional rights by acting in concert placing Plaintiff under unauthorized arrest and refusing proper medical treatment, as

more fully described in preceding paragraphs, which is actionable under 42 U.S.C. §1985(3).

50.     As a direct and proximate result of the misconduct and abuse detailed above, Plaintiffs experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

51.     The intentional acts, abuse, and omissions committed by the defendant City's agents while acting in concert were done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff as a civilian and a citizen of the State of New York. Furthermore, the officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred as a result of defendant City's negligent hiring and retention of the involved officers. Plaintiff also did not provoke defendant's agents in any way. As a result, Plaintiff is entitled to exemplary damages.

## Third Cause of Action: Assault

52.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

53.     As a direct and proximate result of Defendants' actions, Plaintiff experienced fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, embarrassment, and humiliation.

54.     The intentional assault committed by the agents of defendant City was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate

disregard for human life and the rights of Plaintiff as a civilian and citizen of the State of New York. Furthermore, the officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred as a result of defendant City's negligent hiring and retention of the involved officers. Plaintiffs also did not provoke defendant City's agents in any way. As a result, Plaintiff is entitled to exemplary damages.

### Fourth Cause of Action: Battery

55.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

56.    Defendant City's agents, including, but not limited to, the individually named officers above, battered Plaintiff by intentionally and forcefully punching Plaintiff in his right eye three times, resulting in severe and permanent injury to Plaintiff's eye and by dragging Plaintiff to the police car and as further indicated in preceding paragraphs.

57.    As a direct and proximate result of defendant City's actions, Plaintiff experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, embarrassment, and humiliation.

58.    The intentional battery committed by the agents of defendant City was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff as a civilian and a citizen of the State of New York. Furthermore, the officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred

as a result of defendant City's negligent hiring and retention of the involved officers. Plaintiff also did not provoke defendant City's agents in any way. As a result, Plaintiff is entitled to exemplary damages.

### Fifth Cause of Action: Intentional Infliction of Severe Emotional Distress

59.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

60.     Defendant City's agents, including, but not limited to, the individually named officers above, intentionally inflicted severe emotional distress on Plaintiff by assaulting, battering, falsely arresting, falsely imprisoning Plaintiff and by refusing Plaintiff proper medical treatment.

61.     As a direct and proximate result of the misconduct and abuse detailed above, Plaintiff experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

62.     The intentional acts, abuse, and omissions committed by the defendant City's agents were done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff as a civilian and a citizen of the State of New York. Furthermore, the officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred as a result of defendant City's negligent hiring and retention of the involved officers. Plaintiff also did not provoke defendant's agents in any way. As a result, Plaintiff is entitled to exemplary damages.

## Sixth Cause of Action: Negligence

63.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

64.    Defendant City's agents, including, but not limited to, the individually named officers above, as police and correction officers, owed a duty to Plaintiff to perform their duties without violating Plaintiff's constitutional, statutory, or common law rights, and without abusing their authority as officers to cause undue tangible and intangible injuries to Plaintiff.

65.    Defendant City's agents breached that duty by, without cause and being completely unauthorized to do so, by assaulting, battering , falsely arresting, falsely imprisoning Plaintiff, and intentionally inflicting emotional distress on Plaintiff and refusing Plaintiff proper medical treatment.

66.    As a direct and proximate result of Defendants' negligence, Plaintiff experienced personal and physical injuries, pain and suffering, fear of imminent physical injury or death, severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

67.    At all relevant times, defendant City's agents were acting within the scope of their employment as officers of the New York Police Department and New York City Department of Correction, which are organized and operated by defendant City.

68.    The intentional acts, abuse, and omissions committed by the defendant City's agents were done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff as a

15

civilians and a citizen of the State of New York.  Furthermore, the officers involved in

the incidents included officers in supervisory roles, and the acts, abuse, and omissions

committed by the officers occurred as a result of defendant City's negligent hiring and

retention of the involved officers.  Plaintiff also did not provoke defendant City's agents

in any way.  As a result, Plaintiff is entitled to exemplary damages.

### Seventh Cause of Action: Negligence

69.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were

fully set forth at length herein.

70.     Defendant City owed a duty to Plaintiff to train and supervise and otherwise

control its police and correction officers in carrying out their duties to defend and enforce

the constitutional, statutory, and common law rights of Plaintiff and other matters

incidental to the exercise of their functions.

71.     Defendant City failed to provide adequate training, supervision, and control of

defendant's agents.  Such failure constitutes negligence.

72.     As the direct and proximate result of defendant City's negligence, Plaintiff

experienced personal and physical injuries, pain and suffering, fear of imminent physical

injury or death, an invasion of his privacy, severe psychological pain, severe emotional

distress, severe mental anguish, financial loss, embarrassment, and humiliation.

73.     Defendant City's failure to provide adequate training and supervision to its police

and correction officers constitutes a willful and wanton indifference and deliberate

disregard for human life and the rights and privileges of private citizens, including

Plaintiff, and Plaintiff is therefore entitled to exemplary damages.  Furthermore, the

16

officers involved in the incidents included officers in supervisory roles, and the acts, abuse, and omissions committed by the officers occurred as a result of defendant City's negligent hiring and retention of the involved officers.  Plaintiff also did not provoke defendant City's agents in any way.  As a result, Plaintiff is entitled to exemplary damages.

### Eighth Cause of Action: Harassment

74.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

75.    Defendant City's agents, including, but not limited to, the individually named officers above, harassed Plaintiff by assaulting, battering , falsely imprisoning Plaintiff, and intentionally inflicting emotional distress on Plaintiff.

76.    As a result of defendant's agents' actions, Plaintiff is alarmed and annoyed and experienced severe psychological pain, severe emotional distress, severe mental anguish, financial loss, embarrassment, and humiliation.

77.    Defendant is liable to Plaintiff for his harassment under the doctrine of *respondeat superior*.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands a jury trial and the following relief against Defendants as follows:

   a.    Compensatory and punitive damages in the amount of $5,000,000 (FIVE MILLION DOLLARS) for the damages to Plaintiff caused by Defendants;

17

b.  Costs of this action, including attorney's fees pursuant to The Civil Rights

Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988; and

c.  Such other and further relief as this Court may deem just and proper,

including injunctive and declaratory relief.

Dated:  Uniondale, New York
        November 12, 2009

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____
        Mark S. Mulholland
        Thomas A. Telesca
        *Attorney for Plaintiff*
        1425 RXR Plaza
        East Tower, 15th Floor
        Uniondale, New York 11556
        (516) 663-6600